# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# RICHMOND DIVISION

| | |
|---|---|
| UHURU B. ROWE, | : |
| Plaintiff, | : |
| vs. | : Civil Action No. 3:18-cv-780 |
| HAROLD W. CLARKE, T. DARDEN, M. CARPENTER, GEORGE L. HALLOWAY and EDDIE L. PEARSON | : |
| Defendants. | : |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' SECOND MOTION TO DISMISS

### STATEMENT OF FACTS

Uhuru Rowe is a prisoner of the Commonwealth of Virginia who has been active in criticizing the prison system. Complaint ¶14. In June of 2018, he tried to send several emails through the prison system which contained two essays critical of the prison where he was then incarcerated. Complaint ¶15; Exhibits A, B to Complaint. Those essays were censored, but Mr. Rowe never received an explanation of what parts of the essay were objectionable and for what reason. Complaint ¶¶26, 31, 34, 36, 39-42.

Complaint ¶¶32, 39. Defendant Carpenter responded to Mr. Rowe's Informal Complaints by simply stating: "Inspection of Offender Correspondence according to Operating Procedure 803.1. Correspondence is read, censored, or rejected based on legitimate facility

interests of order and security." Complaint ¶31. The Virginia Department of Corrections has a regulation which provides that Responses to the Informal Complaint must be in writing "with reasons for the response stated clearly." OP 866.1(V.)(D). Moreover, OP 803.1 is twenty one single spaced pages covering a wide variety of issues. Complaint ¶39.

Plaintiff did pursue Regular Grievances asserting that the rejection of his outgoing correspondence violated his free speech rights. Complaint ¶29, 39. Defendant Darden responded to each by stating: "After thoroughly reviewing the information presented by staff and the policy governing the issue, I find there has not been a violation of policy; therefore, this grievance is UNFOUNDED." Complaint ¶34. Again, no information was given as to the reason for rejecting the grievance as is required by OP 866.1(VI.)(C.)(1.)((d.). *Id.*

Mr. Rowe took appeals from these determinations to the Regional Administrator for the Eastern Region, Defendant Holloway, who responded by stating as to each: "Based on the information provided, I am upholding the decision of the Level I respondent, which has determined that your grievance was Unfounded." Complaint ¶¶36, 41. Having exhausted his remedies, Mr. Rowe filed suit.

## ARGUMENT[1]

### I. PLAINTIFF HAS SET FORTH A VALID CLAIM FOR DENIAL OF HIS FIRST AMENDMENT RIGHTS.

As Defendants acknowledge, people in prison do not lose their First Amendment rights

---

[1] Plaintiff concedes that, due to his lack of personal involvement, Defendant Ray is not liable for any of the conduct herein.

2

while imprisoned. Defendants' Memorandum at 7.[2] Plaintiff also agrees with the Defendants that to censor prisoner writings, prison authorities must show that (1) it furthers a substantial governmental interest unrelated to the suppression of expression and (2) it is no greater than is necessary or essential to the protection of the particular governmental interest involved. *Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989). Most importantly for purposes of this case, "[p]rison officials may not censor inmate correspondence simply to eliminate unflattering or unwelcome opinions or factually inaccurate statements." *Procunier v. Martinez*, 416 U.S. 396, 413 (1974). The allegation in this case is that there was no substantial governmental interest in suppressing the content of the emails in question and that it was the criticism of the prison which prompted the censorship.

**II.    MR. ROWE HAS PLED PLAUSIBLE CLAIMS AGAINST DEFENDANTS CARPENTER AND PERKERSON.**

Defendants claim that the SAC "plainly fails to state any facts whatsoever regarding their involvement in the dispatch of the documents attached as Exhibits A and B and thus fails to state any claim against them." Defendants' Memo at 8. In fact, the allegations are that Defendants Carpenter and Perkerson reviewed some of Mr. Rowe's emails waiting to be sent out. Complaint ¶25. One of the emails included the content of Exhibit A to the Complaint. *Id.* Both Defendants Carpenter and Perkerson, believing that it should be censored[3], took the email to the operations

---

[2]"In the case [as here] of direct personal correspondence between inmates and those who have a particularized interest in communicating with them, mail censorship implicates more than the right of prisoners." *Procunier v. Martinez*, 416 U.S. 396, 408 (1974).

[3]Ms. Carpenter's words. Censored means "suppressed, altered, or deleted as objectionable." (Miriam Webster Dictionary, available at https://w.w.w.merriam-webster.com/dictionary/censored. In the context used by Plaintiff, this is not a legal conclusion since Plaintiff acknowledges that prison officials have wide latitude in censoring correspondence.

3

manager, Defendant Birckhead, who approved their recommendation and who directed that it be censored.[4] Ms. Carpenter has also stated (though not to Mr. Rowe) that the content "was censored" and for good reasons. *Id.* at ¶26.

As to Exhibit B to the Complaint, Plaintiff asserts that it was also censored and that censorship was accomplished by either Defendant Carpenter or Defendant Perkerson. ¶¶37-38. [5] [6] Defendants maintain that Plaintiff's failure to identify who did what with Exhibit B to the Complaint is fatal to his claim. The very case that Defendants cite (Memo at 10), upheld an allegation "on information and belief" because "[a] plaintiff is generally permitted to plead facts based on "information and belief" if such plaintiff is in a position of uncertainty because the necessary evidence is controlled by the defendant." *Ridenour v. Multi-Color Corp.*, 147 F. Supp. 3d 452, 456 (E.D. Va. 2015)(and cases cited therein). In this case, the specific conduct of Defendants Carpenter and Perkeson (the two intelligence officers) and the role each played in the

---

*See e.g. Thornborough supra.* The Defendants characterize the term as "unlawful censorship." Defendant's Memo at 9. That would be a legal conclusion. This term is regularly used by the Supreme Court to denote that outgoing mail is rejected and not delivered to its intended recipient. *See e.g. Procunier v. Martinez, supra*. 416 U.S. 396, 398-99 ("correspondence was censored for nonconformity to certain standards").

[4] Ms. Carpenter's words.

[5] Defendants claim that the issue is not censorship but rather whether the content that was suppressed ultimately is received by someone. Defendant's Memo at 9. That is not the law. If, for example, the prison improperly suppressed a prisoner's writings but the prisoner told a friend or relative the essence of what he had written, the issue would clearly be the conduct of the prison authorities and not the fact that someone learned about the content at some later date. The fact that it is ultimately received outside the prison, however, may be a factor in damages.

[6] Defendants also claim that Defendant Birckhead's direction to censor (or suppress) the essay was not carried out. Defendant's Memo at 9. The Complaint ¶26, alleges that Defendant Carpenter acknowledged that it was censored and the reason therefore.

4

censorship of Plaintiff's essay set forth as Exhibit B to the Complaint is wholly within the knowledge of Defendants and will require discovery. Given their involvement in the censorship of the previous essay and their role in monitoring emails sent by Mr. Rowe, it is more than plausible that one or both of these defendants accomplished[7] the censorship of the essay. It is clear that Defendants Carpenter and Perkerson were personally involved in the decision to censor both essays aware of the First Amendment claim by Mr. Rowe.

### III. PLAINTIFF HAS SUFFICIENTLY ALLEGED THE PERSONAL INVOLVEMENT OF DEFENDANTS DARDEN AND HOLLOWAY IN VIOLATING PLAINTIFF'S FIRST AMENDMENT RIGHTS.

Plaintiff's initial complaint (Regular Grievance) claimed that his free speech rights were violated by censoring his outgoing email message and by the fact that no specific or clear reason was given for the censorship. Defendant Darden responded by stating that he had conducted "an investigation into your complaint . . . and [a]fter thoroughly reviewing the information presented by staff and the policy governing the issue, he found no violation of policy." Complaint ¶34. Defendant Holloway similarly stated that he had conducted "an investigation into your claims" and determined that it was unfounded. Complaint ¶36.

Defendants maintain that there is no liability for grievance decisions. Defendants' Memo

---

[7]Accomplish means : to bring about (a result) by effort, to bring to completion. Merium Webster Dictionary, available at https://www.merriam-webster.com/dictionary/accomplish.

5

at 14-15.[8] First, while there is no constitutional obligation to have a grievance system[9], once one is initiated, it must comport with the Constitution. "One may not have a constitutional right to go to Baghdad, but the Government may not prohibit one from going there unless by means consonant with due process of law." *Cafeteria & Rest. Workers Union, Local 473, AFL-CIO v. McElroy*, 367 U.S. 886, 894 (1961). Having instituted a grievance system, constitutional rights may be implicated by that process.

In support of its position, Defendant cites to one published opinion and several unpublished ones. Reliance on *George v. Smith*, 507 F.3d 605, 609 (7th Cir 2007) may be misplaced as another panel of the same court has held that a negative response to a grievance is actionable. *Johnson v. Snyder*, 444 F.3d 579, 583–84 (7th Cir. 2006), overruled on other grnds by *Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013). *Johnson v. Snyder* held that, in the prison context, "[t]o be personally responsible, an official 'must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye.'" (citation omitted). In that case "Director Snyder did not personally receive, review or decide appeals of inmate grievances," and was therefore not liable. *Id.*

There are unpublished cases in which it is held that denial of a grievance cannot form the basis for § 1983 liability. *See e.g. DiPaola v. Ray*, 2013 WL 4451236 *8 (citing only *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006)). But there are also *published* opinions holding that

---

[8]Plaintiff recognizes that the Court has already ruled that grievance decisions cannot create a cause of action (Mem. Op. ECF#20 at 9). However, Plaintiff has now amplified his Complaint and asks the Court to revisit this issue.

[9]Some cases cited by Defendants only stand for the proposition that a prisoner has no constitutional right to a grievance process. *e.g. Booker v. South Carolina Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017).

it can. *See e.g. Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)( To establish liability, "[a] supervisory official, after learning of the violation through a report or appeal, may have failed to remedy the wrong"); *Johnson v. Snyder, supra.; Fruit v. Norris*, 905 F.2d 1147, 1151 (8th Cir. 1990)("However, supervisors can be liable for their personal involvement in a constitutional violation, or "when their corrective inaction amounts to 'deliberate indifference' to or 'tacit authorization' of the violative practices. . . .In this case, [Warden] Norris' action in denying the administrative appeals of appellants' disciplinary actions . . . clearly is sufficient to hold him liable."(citation omitted): *Williams v. Smith*, 781 F.2d 319, 324 (2d Cir. 1986) ("Williams has, however, sufficiently alleged that Superintendent Smith was personally involved in depriving him of his due process right to call witnesses. Williams expressly claimed that Smith affirmed his conviction on administrative appeal."); *Johnson v. Pearson*, 316 F. Supp. 2d 307, 312, 322 n.8 (E.D. Va. 2004)("[Warden] Pearson then determined Plaintiff's grievance to be unfounded, which the Regional Director ("Mr.Fleming") upheld on appeal. . . . the Court cannot understand how Defendants believe Warden and Mr. Fleming were not personally involved in violating Plaintiff's constitutional rights. Both individuals directly rebuffed Plaintiff's concerns during his administrative grievance proceedings."; *Amaker v. Hakes*, 919 F.Supp. 127, 131-32 (W.D.N.Y. 1996)("Defendant [Warden} Kelly asserts on this motion that whatever knowledge of plaintiff's grievances he may have obtained through these appeal procedures is insufficient to impose § 1983 supervisory liability. However, under Second Circuit caselaw, supervisory liability may be found where the prison official learned of the alleged misconduct through the facility's appeals process and 'failed to remedy the wrong.'").

The weight of legal authority holds that a prisoner may have a cause of action against

those who have considered appeals on the grounds that they have been made aware of a constitutional violation, approve the violation and fail to take any action to correct it. Defendants Darden and Holloway were personally involved in the denial of First Amendment rights to Mr. Rowe and are liable therefore.

IV. **DEFENDANTS CARPENTER, DARDEN AND HOLLOWAY DEPRIVED PLAINTIFF OF HIS RIGHTS PROTECTED BY THE FIRST AND FOURTEENTH AMENDMENTS TO KNOW THE REASON FOR THE REJECTION OF HIS ESSAYS THEREBY DEPRIVING HIM OF A REASONABLE OPPORTUNITY TO PROTEST THAT DECISION AND IN VIOLATION OF VDOC'S OWN RULES.**

"[T]he decision to censor or withhold delivery of a particular letter must be accompanied by minimum procedural safeguards." *Procunier v. Martinez*, 416 U.S. 396, 417 (1974) rev'd on other grnds, *Thornbough v. Abbot*, 490 U.S. 411(1989)[10]. *Procunier* it upheld procedures whereby "an inmate be notified of the rejection of a letter written by or addressed to him, that the author of that letter be given a reasonable opportunity to protest that decision, and that complaints be referred to a prison official other than the person who originally disapproved the correspondence." *Id*. at 419. According to the Fourth Circuit, "the key elements approved in the *Procunier* procedure are: (1) appropriate notice; (2) a reasonable opportunity to challenge the initial determination; and (3) an ultimate decision by a disinterested party not privy to the initial censorship determination. Due process requirements are met provided these guidelines are present. We are not alone in this view." *Hopkins v. Collins*, 548 F.2d 503, 504 (4th Cir. 1977)(and

---

[10]In *Thornbough*, the Court specifically limited *Martinez* to "regulations concerning outgoing correspondence," which the Court found to pose no significant danger inside the prison. *Id*. at 411–13.

cases cited at 504 n.3). *Compare Pittman v. Hutto*, 594 F.2d 407, 412 (4th Cir. 1979)("Under the system both before and after promulgation of the guidelines, Mrs. Kennedy examined each article that was questioned with the inmate editors, told them the basis of her objections, and afforded them an opportunity to revise and seek further review after the revision."). *See also Bonner v. Outlaw*, 552 F.3d 673, 675–76 (8th Cir. 2009)("[i]nmates do have a right to procedural due process ... when their mail is rejected."); *Couch v. Clarke*, 2019 WL 1433777, *6 (W.D.Va. 2019).

Mr. Rowe's point is simple. While he received notice upholding the censorship of his essays, he was never told how the essays violated the operating procedure. That is inadequate notice as a matter of state and federal law. There is no meaningful opportunity to protest a decision to censor mail if you do not know why it was rejected. Indeed, prison regulations require a proper response to a grievance: "At each level of the procedure, responses to each grievance will be made in writing, with reasons for the decision stated clearly." OP 866.1(IV)(G)(1). In the above manner, Defendants Carpenter, Darden and Halloway violated Mr. Rowe's due process and First Amendment rights.

## V. DEFENDANTS ARE NOT ENTITLED TO A DISMISSAL OF PLAINTIFF'S REQUEST FOR AN INJUNCTIVE RELIEF.

Plaintiff's cause of action is that he was deprived of his free speech rights when officials both at the Sussex II prison complex as well as the Eastern Regional Director refused to deliver his writings. The deprivation of First Amendment rights constitutes irreparable injury as a matter of law. The reason the writings were censored, according to the Complaint, was because of a desire on the part of Defendants to prohibit criticism of their facility. Complaint ¶20. "Plaintiff is

a politically conscious prisoner who, among other things, writes essays regarding prison life, often critical of the prison administration." Complaint ¶11.

Defendants argue that Plaintiff faces no real threat of future harm because he has been moved to a different prison and therefore lacks standing to seek equitable relief. Defendant's Memo at 18-20. The Defendants in this case do not work for Sussex II State Prison. They work for the Department of Corrections and can be assigned to any prison in the state. In fact, Warden Ray, who was the warden at Sussex II at the times relevant to the Complaint is now warden at the institution where plaintiff is currently incarcerated, Greensville. The Eastern Regional Director also has jurisdiction over the institution where Mr. Rowe is presently incarcerated.

*Porter v. Clarke*, 852 F.3d 358, 364 (4th Cir. 2017), was a challenge to the conditions on death row. VDOC spent some two million dollars to modify the conditions such that the Plaintiffs conceded it met constitutional standards. The district court denied the plaintiffs application for equitable relief holding that "the improvements voluntarily made by defendants have rendered plaintiffs' claims moot. . . because the challenged practices " 'could not reasonably be expected to recur' " in light of Defendants' "policy and procedural changes[ as well as] physical changes to the death row facilities,"will not return to those conditions," *Id*. However, the Fourth Circuit held that cessation of unconstitutional activity is not sufficient to deprive the court of jurisdiction. So long as the defendant maintains that their prior conduct was lawful, there is still a case or controversy since the defendant would otherwise be free to return to its old ways. The rule is now that "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Porter v. Clarke*, 852 F.3d 358, 364 (4th Cir. 2017).

10

The Defendants here have made no such showing. Thus, this case is not moot, meaning that there is a continuing case or controversy and the Plaintiff in this case, who has already suffered harm, has standing to raise the issues. Defendant Clarke is also a proper person to enjoin from allowing censorship of materials that do not pose a security risk as he is the person with system wide authority.

Moreover, an injunction is necessary to remedy the very censorship at issue. Because they improperly censored his writings, Defendants should be required to forward those writings to their intended recipient.

In any event, a declaratory judgment would be appropriate to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. The Fourth Circuit has held that a district court should normally entertain a declaratory judgment action when it finds that the declaratory relief sought: (1) "will serve a useful purpose in clarifying and settling the legal relations in issue," and (2) "will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."*Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 422 (4th Cir. 1998). Such a declaration in this case would serve a useful purpose in clarifying and settling the legal relations between Mr. Rowe and prison authorities with respect to his writings intended to sent outside the prison. It would also terminate and afford relief from the controversy giving rise to the proceeding.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be denied.

Respectfully submitted,<br>
UHURU ROWE<br>
By Counsel

s/Jeffrey E. Fogel
Jeffrey E. Fogel, VSB #75643
Attorney at Law
913 E. Jefferson Street
Charlottesville, VA 22902
434-984-0300 (Tel)

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing opposition to Defendants' Second Motion to Dismiss has been served on counsel for defendants on August 16, 2019, by filing the same with the ECF system which will provide notice to:

> Laura Maughan
> Office of the Attorney General
> 202 North Ninth Street
> Richmond, VA 23219

s/Jeffrey E. Fogel<br>
Jeffrey E. Fogel