**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

UHURU ROWE,

      *Plaintiff,*

v.                          CASE NO.  3:18cv780

HAROLD W. CLARKE, *et al.*,

      *Defendants.*

## REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' SECOND MOTION TO DISMISS

Harold W. Clarke, Michelle Carpenter, Natasha Perkerson, T.L. Birckhead, T. Darden, Tracy Ray, and Gregory L. Holloway ("Defendants"), by counsel, submit the following Reply to Plaintiff Uhuru Rowe's Opposition to Defendants' Motions to Dismiss. Dkt. No. 31.

### Introduction

Rowe's Opposition to Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint ("SAC") does many things. It clarifies the claims Rowe attempts to bring and the Defendants against whom he attempts to bring them. It also attempts to expand liability for prison officials' responses to grievances and complaints, based entirely on inapposite case law, most of which is from non-binding jurisdictions. It even concedes that Rowe's SAC fails to state a claim against at least one defendant. What it does not and cannot do is resuscitate a complaint that fails to state claims against the named defendants.

Defendants address the following issues in this Reply: (1) Personal Involvement; (2) Standing for Injunctive Relief; (3) Declaratory Relief; (4) First Amendment Liability Based on

the Grievance Procedure; and (5) Procedural Due Process Claims. Defendants stand by the arguments raised in their Memorandum, even if not expressly addressed herein.

## A.     Personal Involvement

### i.     *Defendant Ray*

Rowe concedes that his SAC fails to state a claim against Defendant Tracy Ray. *See* Pl.'s Resp. 2. ("Ray is not liable for any of the conduct herein."). Accordingly, Defendant Ray respectfully requests this Court dismiss any and all claims against him.

### ii.     *Defendant Clarke*

Rowe has not addressed Defendant Clarke's arguments regarding a failure to include factual support for Clarke's  personal involvement in the events outlined in the SAC. Nor has he addressed this Court's previous decision granting Clarke's Motion to Dismiss based on the fact that the First Amended Complaint was "utterly devoid of any factual allegations against Clarke." Mem. Op. 7. Accordingly, any argument on Clarke's personal involvement is waived and Defendants respectfully request this Court dismiss any and all claims against Clarke.

### iii.     *Defendant Birckhead*

Rowe also fails to address Defendant Birckhead's arguments regarding the sparsity of allegations against her. Instead, Rowe simply re-asserts the allegation in the SAC that Birckhead "directed" that the document at Exhibit A to the SAC be censored. Pl.'s Resp. 4. The SAC remains deficient in this regard as to Defendant Birckhead, because the SAC alleges only that Birckhead "directed" that others "censor" Rowe's correspondence. There is nothing to link Birckhead to the actual "censorship" of Exhibit A. Instead, the SAC goes on to state that, following this direction from Birckhead, Carpenter "inadvertently" allowed the "same content" to exit the prison via the United States mail. SAC ¶¶ 26, 28.

This last distinction is not, as Rowe argues, one raised for the proposition that, so long as the content was ultimately received by *someone*, well then no harm, no foul. Pl.'s Resp. 4 n.5. Instead, Defendants raised this argument regarding Exhibit A for the purpose of illustrating that Rowe's SAC failed to state a claim based on any interference with this document whatsoever. Defs.' Mem. 9. From the face of the SAC, it appears that Birckhead is alleged to have "directed" a document be "censored", but then, "inadvertently", it was not. SAC ¶¶ 26-28. These allegations fail to establish any "censorship" of or interference with Exhibit A. More specifically, they fail to support a claim against Birckhead. To the best of Defense Counsel's knowledge, there is no First Amendment claim for "attempted censorship." Accordingly, any claims against Defendant Birckhead should be dismissed.

### B. Standing for Injunctive Relief

Instead of addressing the bulk of Defendants' arguments regarding Rowe's lack of standing to seek injunctive relief, Rowe instead shifts his argument to one surrounding mootness and voluntary cessation of a purportedly unlawful behavior. "Mootness and standing are related, yet distinct concepts." *Meredith v. Stein*, 355 F. Supp. 3d 355, 361 (E.D.N.C. 2018). While Rowe's statements of the law on the issue of mootness are correct, they miss the point.

Defendants argued – both in the instant Motion to Dismiss and in their previous Motion to Dismiss – that Rowe lacked standing to seek injunctive relief because he had failed to allege any "facts to show that now, more than a year later and at a different facility, Rowe is somehow at risk of being harmed again, much less that any such risk is 'real and immediate.'" Defs.' Mem. 19. The main problem in Rowe's SAC was that he failed to allege any facts to show that he was subject to a continued risk of harm. Rowe's allegations in the SAC were and are entirely

retrospective, not prospective. Therefore, they failed to establish any risk of future harm and thus failed to entitle him to injunctive relief.

The Supreme Court addressed this very issue in *City of Los Angeles v. Lyons* 461 U.S. 95 (1983). The Fourth Circuit addressed it in *Bryant v. Cheney*. 924 F.2d 525 (4th Cir. 1991). The holdings on this issue are clear: "The equitable remedy is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again." *Lyons*, 461 U.S. at 111. "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present, adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974).

In his Response, Rowe attempts to add facts that are not present in the SAC and to offer purely speculative bases for the requested injunctive relief. There, Rowe states that the defendants "work for the Department of Corrections and can be assigned to any prison in the state." Pl.'s Resp. 10. Additionally, Rowe adds that Warden Ray – against whom he concedes he has failed to state a claim – is now the warden at Rowe's current facility: Greensville. *Id.* And, Rowe adds, the "Eastern Regional Director also has jurisdiction over the institution where Mr. Rowe is presently incarcerated." *Id.* None of this was in the SAC,[1] but that does not really matter. Even if we do accept these statements as true, nothing about them tends to show any "real or immediate threat" that Rowe will be harmed again in the future. *Lyons*, 461 U.S. at 111.

Rowe has alleged only "past exposure to [allegedly] illegal conduct" and has not established standing to seek injunctive relief. His claim for this relief should be dismissed.

---

[1] A plaintiff's complaint "'may not be amended by the briefs in opposition to a motion to dismiss.'" *Weakley v. Homeland Security Solutions, Inc.*, No. 3:14cv785, 2015 WL 11112158, at*5 (E.D. Va. May 19, 2015) (quoting and citing multiple cases).

4

### C. Declaratory Judgment Relief

Rowe also contends that a declaratory judgment would be appropriate in this case "'to declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.'" Pl.'s Mem. 11 (quoting 20 U.S.C. § 2201). While a declaratory judgment certainly can be helpful in, say, a dispute between an insured and an insurer regarding coverage or a duty to defend, it would serve little purpose in the instant case.

Declaratory judgments are appropriate "when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996). A court's exercise of such power is discretionary. *Id*.

Here, the request for a declaratory judgment is not appropriate because there is no dispute as to the legal relations of the parties. Rowe is an inmate in the custody of the Department of Corrections. The parties agree on the First Amendment legal standards that apply to that relationship in the context of prison mail. Defendants also do not contest their roles as state actors or actors "under color of state law" for purposes of § 1983 liability. Other than resolving those undisputed relations, there is little else a declaratory judgment could do for Rowe. Here, the parties know their roles. The question that remains – assuming Defendants' Motion is denied – is whether Defendants are liable to Rowe for a violation of his constitutional rights. Because a declaratory judgment would serve no useful purpose in clarifying the legal relations of the parties, Defendants respectfully request this Court not exercise its discretionary authority to award such relief.

D.      **First Amendment Liability Based on the Grievance Procedure – Darden and Holloway**

Rowe has "amplified" his complaint on the issue of liability based on Defendants Darden and Holloway's responses to his grievances and requests the Court "revisit" the issue of their First Amendment liability, which is based solely on their responses to Rowe's grievances. Pl.'s Resp. 6 n.8. In support of this request, Rowe primarily relies on non-binding case law from the Second and Eighth Circuits, much of which is inapplicable to the allegations in the SAC or the arguments in Defendants' Motion. Essentially, Rowe seeks to hold Darden and Holloway liable for a purported violation of his First Amendment rights simply because they responded to his grievances after the alleged unconstitutional conduct occurred. In the Fourth Circuit, he cannot do this. Rowe's cases from the Second and Eighth Circuits do not support his argument, either.

*i.      Fourth Circuit Case Law*

The consistent holdings in the Fourth Circuit are clear: there is no liability for a prison official's response to an administrative grievance based on an allegation of completed misconduct. *See* Defs.' Mem. 14 (citing cases); *see also Green v. Beck*, 539 Fed. App'x 78, 80 (4th Cir. 2013) (finding that the plaintiff's complaint contained, at most, allegations that certain defendants failed to investigate the inmate plaintiff's grievances regarding the recognition of the plaintiff's religious name change and that this was not sufficient to sustain a §1983 claim against these officials); *Washington v. Federal Bureau of Prisons*, No. 5:16cv3913, 2019 WL 2125246, at *12 (D.S.C. Jan. 3, 2019) (holding that there could be no liability based solely on prison officials' responses to grievances from a blind inmate, alleging failure to accommodate his disability and inconsistent medical and personal care based on his blindness).

Within the Fourth Circuit, the only time responses to grievances may contribute to a constitutional violation are in situations where the lack of response or remedy to a situation

raised in the grievance evidences knowledge of a risk and a conscious decision to disregard such risk. Importantly, it is not the response to the grievance that is relevant in these situations. The grievances are relevant to establish a defendant's knowledge of a risk in support of an element of the grievant's claim. It is the responding party's conduct, not the content of his response, that can get him into trouble.

Such scenarios usually arise in the context of an Eighth Amendment deliberate indifference claim. This was exactly the situation in the sole Virginia case Rowe cites: *Johnson v. Pearson*, 316 F. Supp. 2d 307 (2004). In that case, a non-smoking inmate with a history of respiratory issues was assigned a cellmate who was a habitual smoker. The plaintiff submitted grievances and asked for a re-assignment. The defendants in that case – a warden and a regional administrator – responded to the grievances, ruled them unfounded, and did not take action to move the plaintiff to a non-smoking cell. The Court found that a reasonable person – even a non-medical official, like the warden and administrator – should have known that the plaintiff's housing assignment subjected him to a risk of ongoing harm. Thus the court rejected the defendants' arguments that they were not personally involved in the underlying facts of the case because the grievances were evidence that the defendants knew of a risk to the plaintiff. The key in the *Johnson* case is that these defendants actually could have *prevented* the ongoing harm at issue, and did not. It was not simply their responses to grievances regarding a previously completed action that rendered them liable.

Similarly, in *Scott v. Clarke*, the court held that prison officials could be placed on notice of constitutional violations – again in the context of an Eighth Amendment deliberate indifference claim – via the grievance process. 64 F. Supp. 3d 813, 842 (W.D. Va. Nov. 25, 2014). However, the claim in *Scott* was not one premised upon the defendants' responses to

grievances regarding a completed act, as it is in this case. Instead, grievances were at issue in *Scott* because the court held they illustrated notice to defendants of a continuing risk of harm, one of the elements of a deliberate indifference claim.[2]

Summarized, the law in the Fourth Circuit is clear that simply responding to an after-the-fact grievance regarding an alleged constitutional violation does not contribute to that violation. This argument, however, cannot be used a "defense" in the context of a claim of deliberate indifference to a serious risk of harm to an inmate's health when a non-medical prison official had been informed about the risk via the grievance process.

ii.     *Non-Binding Case Law*

Rowe also attempts to persuade the Court that the "weight of legal authority holds that a prisoner may have a cause of action against those who have considered appeals" contained in an inmate grievance when they fail to take action to correct the issue in the grievance. Pl.'s M. 8. Most of the non-binding case law Rowe cites in support of this proposition, however, does not actually so hold.

First, Rowe upbraids Defendants for their reliance on *George v. Smith,* 507 F.3d 605, 609 (7th Cir. 2007) and claims such reliance "may be misplaced." Pl.'s Mem. 6. Defendants cited *George* for the proposition that "[r]uling against a prisoner on an administrative complaint does not cause or contribute to [a constitutional] violation" and "[a] guard  who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not")). *Id.* at 609. Rowe states that "another panel of the same court has held that a negative response to a grievance is

---

[2] The case upon which the court relied in *Scott* to make this holding also dealt with awareness of a risk of harm to an inmate based on the inmate's submission of grievances and a failure to respond as a basis for a claim of deliberate indifference. *Young v. Wexford Health Sources*, No. 10 C 8220, 2012 WL 621358, at *4-5 (N.D. Ill. Feb. 14, 2012).

actionable" and cites *Johnson v. Snyder*, 444 F.3d 579, 583-84 (7th Cir. 2006) in support of that statement. Pl.'s Mem. 6. *Johnson*, however, did not hold that a negative response to a grievance could be actionable. In fact, the *Johnson* court held that "each of the defendants responded to [the plaintiff's] grievances appropriately and suggested or approved of a remedy." *Id*. at 587. The *Johnson* court had no opportunity to hold that prison officials' "negative" responses to grievances could establish liability for a constitutional violation because *all of the defendants appropriately responded to plaintiff's grievances*. Rowe's reliance on this case for the proposition that negative responses to grievances can trigger constitutional liability is incorrect at best.

Rowe next relies upon the case of *Wright v. Smith*, 21 F. 3d 496 (2d Cir. 1994) for the proposition that a supervisory official can be liable for a constitutional violation based on his denial of a grievance.[3] However, *Wright* did not actually hold this. In fact, the *Wright* opinion does not mention the word "grievance" at all. Instead, the supervisory defendant in *Wright* received notice of an alleged constitutional violation when he was served with a lawsuit on the issue. *Id.* at 498. The court did hold that once he received knowledge of the *ongoing* constitutional violation and failed to take steps to remedy it, this defendant could have been liable under the Second Circuit's established parameters for supervisory liability.[4] That does not mean, however, that a negative response to a grievance establishes the defendant's direct liability in the Second Circuit, or that it should in the Fourth Circuit, either.

Rowe also cites *Fruit v. Norris*, 905 F.2d 1147 (8th Cir. 1990) and *Williams v. Smith*, 781 F.2d 319, 324 (2d Cir 1986) in support of the proposition that a denial of a grievance can form

---

[3] Rowe's First Amendment claims against Darden and Holloway are not premised on a theory of supervisory liability.

[4] The standards for establishing supervisory liability in the Second Circuit and the Fourth Circuit are not the same. This point is further addressed *infra*.

the basis for § 1983 liability. However, these cases also do not actually involve responses to prison grievances.

In *Fruit*, the inmate plaintiffs filed suit against the warden and other officials at their prison. The plaintiffs were disciplined after refusing to work at the prison's sewer station – a dangerous and hazardous job – and their sentence credit earning levels were reduced as punishment.  The plaintiffs appealed this disciplinary decision to the warden, who denied their appeals and affirmed the punishment imposed for their refusal to engage in unsafe work. The plaintiffs then filed suit alleging violations of the Eighth and Fourteenth Amendments based on deliberate indifference to their safety and a violation of due process during the disciplinary procedure.

The *Fruit* court affirmed dismissal of the due process claim, and remanded the case for further evidence on the Eighth Amendment claim. As to the warden specifically, the Court held that his active participation in the *disciplinary process* – not his response to a complaint or grievance – and his role as a *supervisor* rendered him potentially liable for the alleged Eighth Amendment claim. This makes sense in light of the underlying allegation that the inmates were forced to work in an unsafe condition under threat of punishment, and such punishment was actually imposed and affirmed by the warden defendant. This is evidence of sufficient personal involvement in the underlying wrongful conduct, not liability based on a response to a grievance.

Rowe also relies upon *Williams v. Smith* – a Second Circuit case – for the proposition that a supervisory official's denial of a grievance can support liability for a constitutional violation. 21 F.3d at 501. *Williams*, however, also did not involve the prison grievance process or a supervisor's response to a complaint. Instead, *Williams* also involved prison disciplinary procedures and a claim of a due process violation against the prison superintendent who actively

participated in the disciplinary process. In *Williams*, the superintendent affirmed the plaintiff's disciplinary conviction on appeal (despite the plaintiff's allegations that he was not permitted to call witnesses in his defense), thereby cementing his participation in the underlying allegations of a due process violation.

In both *Williams* and *Fruit*, the supervisory defendants actively participated in the underlying unconstitutional conduct. The warden in *Fruit* implemented the other defendants' threat of discipline if the inmates did not work in unsafe conditions. The superintendent in *Williams* erroneously affirmed a disciplinary decision when he denied an inmate's disciplinary appeal. Both of these defendants actively participated in the conduct that formed the basis of the plaintiffs' constitutional claims, which arose during the prison disciplinary process. Their involvement was not merely limited to responding to after-the-fact grievances about completed acts.

These cases are in stark contrast to the facts at issue here. Rowe seeks to hold Darden and Holloway directly liable for a violation of his First Amendment rights *solely* based on their responses to his after-the-fact grievances, not based on their participation in a prison disciplinary proceeding or in any unlawful behavior.

Rowe next relies on another case out of the Second Circuit, *Amaker v. Hakes*, 919 F. Supp. 127, 131-32 (W.D.N.Y. 1996) to support his proposition that negative responses to grievances can or should form the basis of liability in a § 1983 case in the Fourth Circuit. However, *Amaker* – like the other cases addressed above – is a case involving supervisory liability and a failure to take action in response to a problem, not simply direct liability for a negative response to an inmate grievance. This distinction matters because the standards for supervisory liability in the Second Circuit and the Fourth Circuit are very different.

In the Second Circuit, a supervisor may be personally liable for a constitutional violation by: direct participation in the incident; failure to remedy a wrong after learning about it through a report or appeal; the creation of a policy or custom permitting violations to occur or continue; or if he or she was grossly negligent in managing subordinates who permitted unlawful conditions. *Wright*, 21 F.3d, 496, 501 (quoting *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986)). The Fourth Circuit's approach is different. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Establishing supervisory liability in the Fourth Circuit requires a showing:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,'; and (3) that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Id.* (internal citations omitted). While a failure to respond to a grievance may be grounds for a claim based on supervisory liability in the Second Circuit, in the Fourth Circuit, it is not.

To simply lift the facts of multiple and inapplicable Second Circuit cases and attempt to use them in support of a claim against prison officials in Virginia – particularly when the claim does not actually involve supervisory liability at all – is improper, and not a basis for expanding liability in a case where none exists. Moreover, Rowe's SAC does not mention the phrase "supervisory liability." Instead, he seeks to hold Darden and Holloway directly liable for a First Amendment violation solely based on their responses to prison grievances in contradiction to established Fourth Circuit case law. Yet every single one of the above cases upon which Rowe relies was brought and adjudicated based on a theory of supervisory liability. Rowe's attempt to change Fourth Circuit case law regarding supervisory liability is baseless, particularly when he has not even brought a claim on such a theory.

###### E.       Procedural Due Process Claims Against Carpenter, Darden, and Holloway

Though it was unclear what type of due process claim Rowe was attempting to bring in his SAC or which defendants he sought to bring it against, he has now clarified that he is pursuing a procedural due process claim against Defendants Carpenter, Darden, and Holloway based on the purported inadequacies of the notice Rowe received when his correspondence was rejected. Pl.'s Resp. 8-9. His allegations fail to state a claim for a procedural due process violation.

In *Procunier v. Martinez*, 416 U.S. 396 (1974), the United States Supreme Court held that a prison's decision to withhold delivery of a particular letter "must be accompanied by minimum procedural safeguards." *Id*. at 418. When an inmate's outgoing correspondence is to be rejected, he must be notified and given a reasonable opportunity to protest the decision. *Id.* His complaints must be "referred to a prison official other than the person who originally disapproved the correspondence." *Id*. at 418-19; *see also Hopkins v. Collins*, 548 F.2d 503, 504 (4th. Cir. 1977).

In *Torres v. Johnson*, the Western District of Virginia applied this law to a complaint brought by a Virginia inmate. No. 7:07cv398, 2007 WL 2570217 (W.D. Va. Aug. 31, 2007). In *Torres*, the court reviewed the notice, opportunity for protest, and response an inmate received when he was not permitted to purchase photographs via the mail. *Id*. at *1. In that case, the plaintiff was not permitted to even view the offending photographs because, according to prison officials, the photographs the plaintiff wanted contained nudity, and possession of nude photos violated the prison operating procedures. The plaintiff filed a grievance about the photos, received a response quoting the operating procedure that prohibited nude photographs, and his

grievance was ruled unfounded. The plaintiff then appealed to a regional director, who upheld the decision.

In evaluating the plaintiff's due process claim, the court noted the standards in *Hopkins* and held that "[i]t is clear from the plaintiff's submissions to the court that he received appropriate notice and a reasonable opportunity to challenge the decision to deny his request to purchase the photographs." *Id*. at *3.

Similarly, in *Smalls v. Johnson*, the court found no procedural due process violation when an inmate plaintiff filed suit about six publications he was not permitted to receive based on prison operating procedures. No. 7:06cv29, 2006 WL 2456343 (W.D. Va. Aug. 21, 2006). In that case, again, the plaintiff was not permitted to review the publications. Nevertheless, he received notice of the publications' rejection along with a citation to the governing operating procedure. He then filed a grievance. The grievance was ruled unfounded and the plaintiff appealed. The decision was upheld and the Deputy Director of VDOC, who "determined that the [Publication Review Committee] had properly disapproved the publications in accordance with DOP 852." *Id*. at *1.

In reviewing the due process claim, the court again held "it is clear that [Plaintiff] was afforded adequate procedural protections." *Id*. at *4. This was so because the plaintiff was notified in writing about the publications' rejection. The publications were then reviewed by a committee, who concurred in the rejection. The plaintiff then filed a grievance and appealed that grievance to the highest level. The court found that these facts constituted "appropriate notice, a reasonable opportunity to challenge [the decision], and an ultimate decision by an uninterested party who was not privy to the initial determination." *Id*.

14

In *Ballance v. Virginia*, another Virginia inmate brought a procedural due process claim regarding a rejection of his access to incoming publications. 130 F. Supp. 2d 754 (W.D. Va. 2000). In that case, the plaintiff was a convicted sex offender who was not permitted to have pictures of children in various states of undress. *Id.* at 756. The plaintiff received an admittedly delayed notice of the confiscation of the incoming materials which explained that the book and brochure at issue had been "disapproved because they violated DOP 852, which empowers the Warden or a designee to review and confiscate any mail containing nude depictions of children." *Id.* The materials were then forwarded to a committee for review and the committee approved part of the materials for the plaintiff's possession. The other materials were lost and neither the committee nor the plaintiff had an opportunity to review them. The court again cited the relevant standards for the "minimum procedural safeguards" required in this situation and held that the prison "afforded [Plaintiff] all of these procedural safeguards." *Id.* at 759.

Finally, in *Rose v. Higgs*, this Court evaluated a similar claim and came to a similar conclusion. No. 2:16cv479, 2018 WL 3301647 (E.D. Va. July 5, 2018). In *Rose*, the inmate plaintiff complained that he was not afforded adequate procedural due process when jail officials restricted his receipt of an internet printout. *Id.* at *11. The Court reviewed the relevant standards and analyzed the facts of the case. The plaintiff in *Rose* had been previously informed – via the inmate handbook – that he could not receive internet printouts. When jail officials intercepted such a printout addressed to the plaintiff, the plaintiff received a "Receipt of Unauthorized Mail form" advising him that certain items had been "placed into property" and that the sender had been notified. *Id.* at *12. He was also informed of his right to appeal this decision, which he did not do. *Id.* In light of those facts, the Court determined the plaintiff had suffered no procedural due process violation.

15

Here, Rowe's allegations are very similar to those outlined in the cases above. Rowe, like the other plaintiffs in the above cases, does not allege that Defendants failed to notify him of the rejection of his correspondence. He apparently does not even take issue with the notice itself because the information contained in the actual notice is absent from the SAC. Instead, the SAC only includes Defendants' responses to Rowe's complaints, which Rowe himself initiated. Clearly, Rowe must have received some sort of notice before filing the complaints about his correspondence. Otherwise, how would he have known to complain? Because Rowe has included no factual support regarding the actual notice he received, his procedural due process claim should fail for that reason alone.

Even if the Court were to consider the procedural due process claim despite the missing notice element, Rowe simply attempts to claim that the process he did receive – specifically, the responses to his complaints – was not sufficient. However, the procedural safeguards required under these facts are "minimum procedural safeguards." Nothing in *Martinez* or *Hopkins* requires that Rowe be given a detailed explanation of why his correspondence was rejected during the course of his complaints and appeals. In fact, in almost all of the above cases, the inmate plaintiffs were not even allowed to review the correspondence or publication at issue before filing their complaints and grievances. Rowe, on the other hand, as the author of the material, did know what was contained in the materials. He believed that the materials should not have been "censored" and he filed a complaint about it. Though his initial informal complaint received a response from Carpenter, he appealed her response to Darden and then to Holloway. Rowe received the "minimum procedural safeguards" required in this context. He received notice of the rejection of his communications. He filed a grievance in protest. His complaint was reviewed by someone other than Carpenter, the person allegedly involved in the rejection of his

16

correspondence. Rowe received procedurally adequate due process in light of the requirements of *Martinez* and *Hopkins*. His allegations regarding insufficient notice fail to state a claim for relief, and Defendants Carpenter, Darden, and Holloway respectfully request dismissal of the procedural due process claims against them.

## Conclusion

Defendants move for dismissal from the case because Rowe has failed to state a claim against them for the reasons outlined herein, as well as those addressed in Defendants' Memorandum. Dkt. No. 30. Rowe's requests to expand First Amendment liability based on Darden and Holloway's responses to his grievances is not consistent with existing Fourth Circuit case law, and such attempts should not be permitted to proceed.

Respectfully submitted,

HAROLD W. CLARKE, MICHELLE
CARPENTER, NATASHA PERKERSON, T.L.
BIRCKHEAD, T. DARDEN, TRACY RAY, and
GREGORY L. HOLLOWAY

By:      s/Laura Maughan
Laura Maughan, VSB#87798
Assistant Attorney General
Office of the Attorney General
Criminal Justice & Public Safety Division
202 North 9th Street
Richmond, Virginia 23219
Phone: (804) 786-0030
Fax: (804) 786-4239
Email:  lmaughan@oag.state.va.us

## <u>CERFIFICATE OF SERVICE</u>

I hereby certify that on the 22nd day of August, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing ("NEF") to the following: Jeffrey E. Fogel, 913 W. Jefferson Street, Charlottesville, Virginia, 22902, jeff.fogel@gmail.com, Attorney for Plaintiff.


By:      s/Laura Maughan
Laura Maughan, VSB#87798
Assistant Attorney General