# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

UHURU B. ROWE,

    Plaintiff,

v.                          Civil Action No. 3:18-cv-780

HAROLD W. CLARKE, et al.,

    Defendants.

## MEMORANDUM OPINION

This matter is before the Court on the MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT (ECF No. 29) (the "Motion") of Harold W. Clarke, Michelle Carpenter, Natasha Perkerson, T. L. Birckhead, T. Darden, Tracy Ray, and Gregory L. Holloway (collectively, the "Defendants"). The Court has considered the Motion and the supporting, opposing, and reply memoranda; and, for the reasons set forth below, the Defendants' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT (ECF No. 29) will be granted.

## BACKGROUND

Uhuru Rowe ("Rowe"), a Virginia state prisoner,[1] filed this action under 42 U.S.C. § 1983 against the seven defendants, who are current or former employees of the Virginia Department of

---

[1] Rowe is currently incarcerated at Greensville Correctional Center ("Greensville") in Jarrat, Virginia. (ECF No. 27 ¶ 5.) Rowe was incarcerated at Sussex II State Prison ("Sussex II") when the alleged violation of his constitutional rights occurred.

Corrections ("VDOC").  See generally SECOND AMENDED COMPLAINT AND JURY DEMAND (ECF No. 27).[2]  According to the SECOND AMENDED COMPLAINT AND JURY DEMAND ("Second Amended Complaint"), Harold W. Clarke ("Clarke") is the Director of VDOC; Michelle Carpenter ("Carpenter") is an investigator at VDOC; Natasha Perkerson ("Perkerson") was an investigator at VDOC; T. L. Birckhead ("Birckhead") was the Operations Manager at Sussex II State Prison ("Sussex II"); T. Darden ("Darden") was the assistant warden at Sussex II; Tracy Ray ("Ray") was the warden at Sussex II; and Gregory L. Holloway ("Holloway") was the Eastern Regional Administrator at VDOC.  (Id. ¶¶ 6-12.)  All seven defendants, except for Clarke[3] and Ray,[4] were sued in their individual capacities.  (Id.)

---

[2]  Rowe filed an initial COMPLAINT AND JURY DEMAND (ECF No. 1) on November 8, 2018.  He subsequently refiled the same document on November 19, 2018.  (ECF No. 6.)  These initial complaints listed only Clarke, Darden, Carpenter, Holloway, and Eddie Pearson ("Pearson") as defendants.  On July 12, 2019, Rowe filed an AMENDED COMPLAINT AND JURY DEMAND (ECF No. 22).  This complaint removed Pearson as a defendant and added Birckhead.  Three days later, Rowe filed a SECOND AMENDED COMPLAINT AND JURY DEMAND (ECF No. 23).  This complaint added Perkerson as a defendant.  Two days later, Rowe again filed a SECOND AMENDED COMPLAINT AND JURY DEMAND (ECF No. 27), which added Tracy Ray as a defendant.

[3]  Clarke is sued only in his official capacity.  (ECF No. 27 ¶ 6.)

[4]  The Second Amended Complaint does not specify whether Ray is sued in his official or individual capacity.  (ECF No. 27 ¶ 11.) If the complaint does not specify in what capacity an official is sued, the "course of proceedings in such cases typically will indicate the nature of the liability sought to be imposed."

Rowe asserts that he is "a politically conscious prisoner who, among other things, writes essays regarding prison life, often critical of the prison administration." (Id. ¶ 14.) Rowe alleges that two of these essays, "Sussex 2 State Prison is a Potemkin Prison" and "Life at Sussex 2 State Prison – Revisited" (collectively, the "Essays"), were censored pursuant to VDOC Operating Procedure 803.1, which concerns Offender Correspondence. (Id. ¶¶ 14-18, 26.)

More specifically, Rowe alleges that Carpenter and Perkerson discovered that Rowe had an online blog, that Perkerson consequently informed Birckhead of the blog, and that Birckhead told Perkerson to "get a 'mail cover.'"[5] (Id. ¶¶ 21-23.) Carpenter allegedly requested a mail cover for Rowe's correspondence, which Ray granted. (Id. ¶ 24.) According to Rowe, Carpenter and Perkerson showed "Life at Sussex 2 State Prison is a Potemkin Prison" to Birckhead, "who, after reviewing the content of the essay, directed that it be censored." (Id. ¶¶ 25-26.) With

---

Kentucky v. Graham, 473 U.S. 159, 167 n. 14 (1985) (quoting Brandon v. Holt, 469 U.S. 464, 469 (1985)) (internal quotation marks omitted). Although the Complaint and the supporting, opposing, and reply memoranda do not discuss Ray's liability at length, the Complaint does not appear to seek to impose personal liability on Ray, which suggests that Ray is sued in his official capacity.

[5] A "mail cover" is the "process by which a nonconsensual record is made of any data appearing on the outside cover of any sealed or unsealed class of mail matter, or by which a record is made of the contents of any unsealed class of mail matter as allowed by law, to obtain information . . . ." 39 C.F.R. § 233.3(c)(1).

respect to "Life at Sussex 2 State Prison - Revisited," Rowe alleges that its "censorship was accomplished by either Defendant Carpenter or Defendant Perkerson, armed with the mail cover provided by Defendant Ray." (Id. ¶¶ 37-38.) Rowe alleges that neither of the Essays "involved escape plans, coded information, criminal activity or anything else that threatened the security or order of the prison." (Id. ¶ 43.) He claims that "the true reason for the censorship of these two essays was a desire on the part of Defendants to limit criticism of their facility." (Id. ¶ 44.) For both of the Essays, Rowe claims that the Defendants did not give him "clear reasons for rejecting his outgoing correspondence . . . ." (See id. ¶¶ 50-51.)

The First Cause of Action (hereinafter, "Count I") asserts that the Defendants violated Rowe's First Amendment rights under the U.S. Constitution by preventing him from "correspond[ing] with non-prisoners in the form of essays." (Id. ¶¶ 45-48.) The Second Cause of Action (hereinafter, "Count II") alleges that the Defendants also violated Rowe's Fourteenth Amendment rights because their "denial of clear reasons for rejecting his outgoing correspondence deprived Mr. Rowe of his right to a reasonable opportunity to protest the decision to reject his correspondence . . . ." (Id. ¶¶ 49-51.) Rowe seeks a declaratory judgment that the censorship of the Essays violated his First Amendment rights; a preliminary and permanent injunction against

4

future censorship, unless the correspondence poses a threat to prison security or order; nominal and compensatory damages; and attorney's fees. (Id. at 8 (prayer for relief).)

All seven defendants subsequently filed the Motion pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). The Court has considered the Second Amended Complaint (ECF No. 27), the DEFENDANTS' FIRST AMENDED ANSWER AND AFFIRMTIVE [SIC] DEFENSES TO SECOND AMENDED COMPLAINT (ECF No. 32), the Motion (ECF No. 29), and the supporting, opposing, and reply memoranda (ECF Nos. 30, 31, 33). The Court dispenses with oral argument because the facts and legal conclusions are adequately presented in the materials and oral argument would not aid in the decisional process. The matter is thus ripe for decision.

## THE STANDARDS GOVERNING MOTIONS TO DISMISS UNDER FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

### a. Legal Standard Under Fed. R. Civ. P. 12(b)(1)

Under Fed. R. Civ. P. 12(b)(1), defendants may move to dismiss if there is no subject matter jurisdiction. In such cases, the "plaintiff has the burden of proving that subject matter jurisdiction exists." Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). Defendants may challenge subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) in the following two ways:

> First, it may be contended that a complaint
> simply fails to allege facts upon which

5

subject matter jurisdiction can be based. In
that event, all the facts alleged in the
complaint are assumed to be true and the
plaintiff, in effect, is afforded the same
procedural protection as he would receive
under a Rule 12(b)(6) consideration. Second,
it may be contended that the jurisdictional
allegations of the complaint were not true. A
trial court may then go beyond the allegations
of the complaint and in an evidentiary hearing
determine if there are facts to support the
jurisdictional allegations.

Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). If the moving

party's challenge falls into the first category, the "moving party

should prevail only if the material jurisdictional facts are not

in dispute and the moving party is entitled to prevail as a matter

of law." Richmond, Fredericksburg & Potomac R.R. v. United States,

945 F.2d 765, 768 (4th Cir. 1991). Because the Defendants contend

that the Second Amended Complaint fails to allege facts upon which

subject matter jurisdiction can be based, not that the

jurisdictional allegations in the Second Amended Complaint are

untrue, the Court must assume the facts alleged in the Second

Amended Complaint are true.

   **b.   Legal Standard Under Fed. R. Civ. P. 12(b)(6)**

   "A complaint should not be dismissed pursuant to Rule 12(b)(6)

for failure to state a claim unless it appears to a certainty that

the nonmoving party cannot prove any set of facts in support of

its claim that would entitle it to relief." Chapman v. Clarendon

Nat'l Ins., 299 F. Supp. 2d 559, 562 (E.D. Va. 2004). When

6

considering 12(b)(6) motions to dismiss, courts "must accept the factual allegations of the complaint as true and construe them in the light most favorable to the nonmoving party." Rockville Cars, LLC v. City of Rockville, 891 F.3d 141, 145 (4th Cir. 2018). "To survive a 12(b)(6) motion, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted). "A claim is plausible on its face, if a plaintiff can demonstrate more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Iqbal, 556 U.S. at 678) (internal quotation marks omitted). However, courts do not "accept as true a legal conclusion couched as a factual allegation." SD3, LLC v. Black & Decker (U.S.) Inc., 801 F.3d 412, 422 (4th Cir. 2015) (quoting Anand v. Ocwen Loan Servicing, LLC, 754 F.3d 195, 198 (4th Cir. 2014)) (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

## DISCUSSION

For the reasons set forth below, the Motion will be granted under both Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6).

### a. Rowe Lacks Standing to Seek Injunctive Relief Because There Is No Real or Immediate Threat that His Writings Will be Censored Again.

"The Constitution limits federal court jurisdiction to cases and controversies." <u>Miller v. Augusta Mut. Ins.</u>, 157 Fed. App'x 632, 635 (4th Cir. 2005). If a party lacks standing, there is no subject matter jurisdiction. <u>AtlantiGas Corp. v. Columbia Gas Transmission Corp.</u>, 210 Fed. App'x 244, 247 (4th Cir. 2006) ("A court does not have subject matter jurisdiction over an individual who does not have standing."). "When an issue of standing is asserted as a basis for lack of subject matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of proof" to establish standing. <u>Trinity Outdoor, L.L.C. v. City of Rockville</u>, 123 Fed. App'x 101, 105 (4th Cir. 2005). To have standing, the "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." <u>Spokeo, Inc. v. Robins</u>, 136 S.Ct. 1540, 1547 (2016). "And when a party seeks injunctive relief, . . . there is the additional requirement of a 'real or immediate threat' that the party will suffer an injury in the future." <u>Griffin v. Dep't of Labor Fed. Credit Union</u>, 912 F.3d 649, 653 (4th Cir. 2019). In other words, the "equitable remedy [of an injunction] is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or

immediate threat that the plaintiff will be wronged again—a likelihood of substantial and immediate irreparable injury." <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 111 (1983) (quoting <u>O'Shea v. Littleton</u>, 414 U.S. 488, 502 (1974)) (internal quotation marks omitted). And, it is settled that "past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects." <u>Id.</u> at 102 (quoting <u>O'Shea</u>, 414 U.S. at 495-96) (internal alterations and quotation marks omitted).

Similarly, as the Court explained in its previous MEMORANDUM OPINION dismissing Rowe's Amended Complaint on June 13, 2019 (ECF No. 20), to have standing for injunctive relief, Rowe must allege facts that establish a "real or immediate threat" that his writings will be "censored" again. <u>See Lyons</u>, 461 U.S. at 111. Because Rowe is no longer incarcerated at the facility where the alleged censorship occurred and the Second Amended Complaint is devoid of factual allegations that any of the seven Defendants have censored or will censor his writings at the new facility, the Court holds that Rowe does not have standing to seek injunctive relief. Although Rowe filed a letter to the Court on September 25, 2019 (ECF No. 34) (the "Letter"), alleging that he has been subjected to retaliation because of this action, the Letter and the

allegations and requests contained therein are not properly before the Court.[6]

First, Rowe is no longer incarcerated at Sussex II—the prison in which his Essays were allegedly censored. (ECF No. 27 ¶ 5.) Second, the Second Amended Complaint does not allege that any of the Defendants have censored or will censor Rowe's writings at Greensville, the prison in which he is currently incarcerated. (See generally id.) Although Rowe claims that the Defendants "can be assigned to any prison in the state," (ECF No. 31 at 10), this allegation "does nothing to establish a real and immediate threat" and "falls far short of the allegations that would be necessary to establish a case or controversy between these parties." See Lyons, 461 U.S. at 105. As the Supreme Court made clear in Lyons, 461 U.S. at 111, to have standing, the plaintiff must allege a substantial likelihood of future harm. See id. For Lyons specifically, the Court explained, "[t]hat Lyons may have been illegally choked by the police . . . does nothing to establish a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part. The additional allegation in the complaint that the police in Los Angeles

---

[6]   The Court denied without prejudice the Letter on January 21, 2020. (ECF No. 35.)

routinely apply chokeholds in situations where they are not threatened by the use of deadly force falls far short of the allegations that would be necessary to establish a case or controversy between these parties." Id. at 105. Likewise, Rowe's argument that the Defendants hypothetically could be reassigned to the prison in which he is incarcerated does not show that he is subject to a real and immediate threat that his writings will be erroneously censored again.

Moreover, although Rowe alleges in PLAINTIFF'S OPPOSITION TO DEFENDANTS' SECOND MOTION TO DISMISS (ECF No. 31) (the "Opposition Memorandum") that Ray is now the Warden at Greensville, Rowe did not include this point in his Second Amended Complaint. "[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss. To hold otherwise would mean that a party could unilaterally amend a complaint at will, even without filing an amendment, and simply by raising a point in a brief." Gray v. Wittstadt Title & Escrow Co., No. 4:11-cv-111, 2011 WL 6139521, at *2 n.2 (E.D. Va. Nov. 28, 2011) (quoting Morgan Distrib. Co. v. Unidynamic Corp., 868 F.2d 992, 995 (8th Cir. 1989)) (internal quotation marks omitted). Therefore, because Rowe failed to include this point in his Second Amended Complaint, the Court will not consider it. Even if the Court were to consider it, the mere fact that Ray is employed at Greensville is not enough to show a real and immediate threat that Ray will erroneously

censor Rowe's writings. Indeed, although most pertinent to analysis under Fed. R. Civ. P. 12(b)(6), Rowe concedes that, "due to his lack of personal involvement [in the alleged censorship], Defendant Ray is not liable for any of the conduct herein." (ECF No. 31 at 2 n.1.)

Consequently, because the Second Amended Complaint is devoid of factual allegations that establish Rowe's standing to seek injunctive relief against any of the Defendants, the Court will grant the Motion under Fed. R. Civ. P. 12(b)(1) with respect to the Second Amended Complaint's request for injunctive relief.

### b. **The Court Will Not Grant Declaratory Relief**.

"[F]or a district court to have jurisdiction to issue a declaratory judgment, two conditions must be satisfied. First, the dispute must be a 'case or controversy' within the confines of Article III of the United States Constitution—the 'constitutional' inquiry." White v. Nat'l Union Fire Ins., 913 F.2d 165, 167 (4th Cir. 1990). The test for the constitutional inquiry is "whether the dispute is definite and concrete, touching the legal relations of parties having adverse legal interests." Id. (quoting Aetna Life Ins. v. Haworth, 300 U.S. 227, 240-41 (1937)) (internal quotation marks omitted). Under this inquiry, the "question is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant

the issuance of a declaratory judgment." Id. at 167–68 (quoting Maryland Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941)) (internal quotation marks omitted).

"Second, the trial court, in its discretion, must be satisfied that declaratory relief is appropriate—the 'prudential' inquiry." Id. at 167. In the Fourth Circuit, a declaratory judgment "is appropriate when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Centennial Life Ins. v. Poston, 88 F.3d 255, 256 (4th Cir. 1996) (quoting Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321, 325 (4th Cir. 1937)) (internal quotation marks and alteration omitted). However, courts should not use declaratory judgments to "try a controversy by piecemeal, or to try particular issues without settling the entire controversy, or to interfere with an action which has already been instituted." Id. at 256–57 (quoting Quarles, 92 F.2d at 325) (internal quotation marks omitted).

The Second Amended Complaint requests a declaratory judgment that "the censorship of [the Essays] violated plaintiff's First Amendment rights." (ECF No. 27 at 8 (prayer for relief).) Additionally, in his Opposition Memorandum, Rowe requests a declaratory judgment "to 'declare the rights and other legal relations of any interested party seeking such declaration,

13

whether or not further relief is or could be sought.'" (ECF No. 31 at 11 (quoting 28 U.S.C. § 2201).) Although there is undoubtedly a controversy in this case, a declaratory judgment will not afford any relief from any uncertainty and insecurity arising from this controversy because, for the reasons stated below, the Second Amended Complaint fails to state a claim with respect to the alleged First Amendment violations. Consequently, because the Court will dismiss the First Amendment claims against the Defendants and because Rowe's request for declaratory relief serves no useful purpose in clarifying and settling the legal relations between the parties, the Court will not grant the requested declaratory relief.

### c. The Court Will Grant the Motion Pursuant to Rule 12(b)(6) for Failure to State a Claim Upon Which Relief Can Be Granted.

Having considered the Second Amended Complaint, the Motion, and the supporting, opposing, and reply memoranda, the Court concludes that the Second Amended Complaint fails to: (1) allege that Ray and Clarke were personally involved in the alleged constitutional violation; (2) state a claim against Darden and Holloway because inmates have no constitutional right to grievance procedures; (3) state a procedural due process claim or First Amendment claim against Carpenter, Darden, and Holloway; and (4) state a First Amendment claim against Birckhead, Carpenter, and

14

Perkerson. For the reasons set forth below, the Motion will be granted pursuant to Fed. R. Civ. P. 12(b)(6).

### 1) The Second Amended Complaint Fails to Allege that Ray and Clarke Were Personally Involved in the Alleged Constitutional Violation.

Section 1983 of Title 42 of the United States Code provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To prove a claim for violation of constitutional rights through § 1983, a plaintiff must establish that he was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." Am. Mfrs. Mut. Ins. v. Sullivan, 526 U.S. 40, 49–50 (1999). For a person to be liable under 42 U.S.C. § 1983[7] for violation of a federal constitutional right, "it must be affirmatively shown that *the official charged acted personally* in the deprivation of the plaintiff's rights. The doctrine of

---

[7] Section 1983 is a procedural vehicle for seeking redress for violations of rights conferred by the U.S. Constitution or federal statutes. Section 1983 confers no substantive rights.

*respondeat superior* has no application under this section." Wright
v. Collins, 766 F.2d 841, 850 (4th Cir. 1985) (quoting Vinnedge v.
Gibbs, 550 F.2d 926, 928 (4th Cir. 1977)) (emphasis added)
(internal quotation marks omitted). Consequently, in § 1983
actions, government officials "may not be held accountable for the
misdeeds of their agents." Ashcroft v. Iqbal, 556 U.S. 662, 677
(2009). "Because vicarious liability is inapplicable
to . . . § 1983 suits, a plaintiff must plead that each
Government-official defendant, through the official's own
individual actions, has violated the Constitution." Id. at 676.
In other words, "supervisors and municipalities cannot be liable
under § 1983 without some predicate constitutional injury at the
hands of the individual state officer, at least in suits for
damages." Waybright v. Frederick Cty., 528 F.3d 199, 203 (4th
Cir. 2008) (quoting City of Los Angeles v. Heller, 475 U.S. 796,
799 (1986)) (internal quotation marks and alteration omitted).

However, government officials may still be held accountable
for the actions of their subordinates under supervisory liability.
As the Fourth Circuit has made clear:

> In order to succeed on a § 1983 claim for
> supervisory liability, a plaintiff must show:
>
> (1) that the supervisor had actual or
> constructive knowledge that [his or her]
> subordinate was engaged in conduct that posed
> a pervasive and unreasonable risk of
> constitutional injury to citizens like the
> plaintiff;

16

> (2) that the supervisor's response to that
> knowledge was so inadequate as to show
> deliberate indifference to or tacit
> authorization of the alleged offensive
> practices[]; and
>
> (3) that there was an affirmative causal link
> between the supervisor's inaction and the
> particular constitutional injury suffered by
> the plaintiff.

Wilkins v. Montgomery, 751 F.3d 214, 226 (4th Cir. 2014) (quoting

Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994)) (internal

quotation marks and alteration omitted).

"To satisfy the requirements of the first element, a plaintiff

must show the following: (1) the supervisor's knowledge of (2)

conduct engaged in by a subordinate (3) where the conduct poses a

pervasive and unreasonable risk of constitutional injury to the

plaintiff." Shaw, 13 F.3d at 799. With respect to the second

element, a "plaintiff may establish deliberate indifference by

demonstrating a supervisor's continued inaction in the face of

documented widespread abuses." Id. (quoting Slakan v. Porter, 737

F.2d 368, 373 (4th Cir. 1984)) (internal quotation marks omitted).

Lastly, as to the third element, a plaintiff may establish

causation by showing an "affirmative causal link between the

supervisor's inaction and the harm suffered by the plaintiff."

Id. (quoting Slakan, 737 F.2d at 376) (internal quotation marks

omitted). And, of course, a viable complaint asserting supervisory

liability must allege facts plausibly supporting each element of

the asserted claim. As set forth above, under Fed. R. Civ. P. 12(b)(6), the Court must accept the factual allegations of the Second Amended Complaint as true, and these factual allegations must state a "plausible" claim to relief. See, e.g., Rockville Cars, LLC v. City of Rockville, 891 F.3d 141, 145 (4th Cir. 2018).

### A. Defendant Ray

Rowe "concedes that, due to his lack of personal involvement, Defendant Ray is not liable for any of the conduct herein." (ECF No. 31 at 2 n.1.) Thus, the Motion will be granted with respect to Ray.

However, even without this concession, the Court would have granted the Motion with respect to Ray. Rowe alleges in the Second Amended Complaint that Ray issued a "mail cover" at Carpenter's request. (ECF No. 27 ¶ 24.) The allegation that Ray permitted Carpenter to review Rowe's correspondence, assumed to be true under Rule 12(b)(6), is not sufficient to show (1) that Ray "had actual or constructive knowledge that [Carpenter] was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like [Rowe]; (2) that [Ray's] response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices[]; and (3) that there was an affirmative causal link between [Ray's] inaction and the particular constitutional injury suffered by [Rowe]." Wilkins v. Montgomery, 751 F.3d 214, 226 (4th Cir. 2014)

(quoting Shaw, 13 F.3d at 799) (internal quotation marks and alteration omitted). Rowe's allegation is insufficient in part because Rowe has failed to show that he suffered a constitutional injury when Ray granted Carpenter's request for a mail cover. Indeed, "inmates' outgoing mail may be opened and inspected by prison officials because otherwise, a prison official would never know that a letter contained the very type of material that could rightfully be censored." Matherly v. Andrews, 859 F.3d 264, 281 (4th Cir. 2017) (quoting Altizer v. Deeds, 191 F.3d 540, 548 (4th Cir. 1999)) (internal quotation marks and alterations omitted). Therefore, Carpenter's request for authorization to open Rowe's outgoing correspondence was not in itself a constitutional injury, and Ray's granting of that request similarly did not violate Rowe's constitutional rights. For this additional reason, the Motion with respect to Ray will be granted. The claims against Ray were so obviously deficient that counsel should never have made them.

## B. Defendant Clarke

Although Rowe amended the Amended Complaint after the Court issued its previous MEMORANDUM OPINION (ECF No. 20) dismissing the claims against several of the Defendants, the Second Amended Complaint remains utterly devoid of any factual allegations against Clarke. The name "Clarke" appears three times in the Second Amended Complaint: (1) Clarke is listed in the header of the Second Amended Complaint as a defendant, (ECF No. 27 at 1);

(2) the Second Amended Complaint lists Clarke in its "PARTIES" section and states his occupation, (id. ¶ 6); and (3) Rowe requests a "[p]reliminary and permanent injunction requiring that facilities under the control and direction of Defendant Clarke not censor plaintiff's outgoing correspondence unless that correspondence poses a threat to the security or order of the prison," (id. at 8 (prayer for relief)). These three fleeting references to Clarke are not sufficient to establish Clarke's involvement in the alleged constitutional violation.

Similarly, Rowe's conclusory statement that "Defendant Clarke is also a proper person to enjoin from allowing censorship of materials that do not pose a security risk as he is the person with system wide authority" is also not sufficient to establish Clarke's personal involvement. (ECF No. 31 at 11.) First, as discussed above, plaintiffs cannot amend their complaints "simply by raising a point in a brief." Gray v. Wittstadt Title & Escrow Co., No. 4:11-cv-111, 2011 WL 6139521, at *2 n.2 (E.D. Va. Nov. 28, 2011) (quoting Morgan Distrib. Co. v. Unidynamic Corp., 868 F.2d 992, 995 (8th Cir. 1989)) (internal quotation marks omitted). Consequently, even if Rowe's statement that Clarke should be enjoined constituted a factual allegation, it cannot save the Second Amended Complaint's failure to include such allegations against Clarke. Second, like the few references to Clarke in the Second Amended Complaint, Rowe's claim that Clarke should be

enjoined does not establish that Clarke was personally involved in the alleged constitutional violation. Consequently, because there are no factual allegations against Clarke, there is no plausible claim for relief stated against him. As was true with the claims against Ray, the claims against Clarke were void of legal merit and should never have been made.

### 2) The Second Amended Complaint Fails to State a Claim Against Darden and Holloway Because Inmates Have No Constitutional Right to Grievance Procedures.

The Second Amended Complaint also fails to state a claim against Darden and Holloway. "[I]nmates have no constitutional entitlement or due process interest in access to a grievance procedure. An inmate thus cannot bring a § 1983 claim alleging denial of a specific grievance process . . . ." Booker v. S.C. Dep't of Corr., 855 F.3d 533, 541 (4th Cir. 2017); see also Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."); Doans v. Rice, No. 87-7244, 1987 WL 38813, at *1 (4th Cir. Oct. 15, 1987) ("Because inmate grievance procedures are not constitutionally required in state prison systems, the failure to follow grievance procedures does not give rise to a § 1983 claim."). Moreover, the "failure of a prison official to follow prison procedures does not, standing alone, amount to a constitutional violation." Morant

v. Vaughn, No. 2:08-cv-155, 2009 WL 6651941, at *6 (E.D. Va. Jan. 8, 2009). Similarly, "a superior's after-the-fact denial of a grievance falls [far] short of establishing § 1983 liability." Henderson v. Clarke, No. 3:12-cv-904, 2015 WL 846686, at *3 n.7 (E.D. Va. Feb. 24, 2015) (quoting DePaola v. Ray, No. 7:12-cv-139, 2013 WL 4451236, at *8 (W.D. Va. July 22, 2013)) (internal quotation marks omitted).

The only allegations against Darden and Holloway are that both defendants found Rowe's grievance to be "unfounded" and failed to explain why they rejected his grievance. (ECF No. 27 ¶¶ 34–36, 40.) Yet, as the Defendants point out, the mere act of denying a prison grievance does not establish a constitutional violation or a § 1983 claim. See, e.g., Booker v. S.C. Dep't of Corr., 855 F.3d 533, 541 (4th Cir. 2017). Indeed, even Darden's alleged violation of prison procedures (by not explaining why he rejected the grievance, (ECF No. 27 ¶ 34)) is not sufficient to establish a constitutional violation. See Morant, 2009 WL 6651941, at *6.

Moreover, as the Court explained above and in the previous MEMORANDUM OPINION (ECF No. 20 at 9), it is possible in some cases for officials not directly involved in the alleged constitutional violation to be put on sufficient notice of the violation that their failure to act can lead to a claim under § 1983. See Vance v. Peters, 97 F.3d 987, 992–94 (7th Cir. 1996). However, the Second Amended Complaint fails to allege any facts indicating that

22

either Darden or Holloway were put on notice of an alleged First Amendment violation or that they somehow participated in it. Instead, the Second Amended Complaint merely alleges that Darden and Holloway denied Rowe's grievance. Consequently, the Second Amended Complaint has not set forth sufficient factual allegations to establish a plausible claim for relief against Darden and Holloway. Again, these claims never should have been made because there is no legal foundation for them.

> **3)** **The Second Amended Complaint Fails to State a Procedural Due Process Claim and First Amendment Claim Against Carpenter, Darden, and Holloway.**

"[I]t is well established that a prison rule that impinges on an inmate's constitutional rights is valid if it is reasonably related to legitimate penological interests." Altizer v. Deeds, 191 F.3d 540, 547 (4th Cir. 1999) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)) (internal quotation marks omitted). Consequently, the "decision to censor or withhold delivery of a particular letter must be accompanied by minimum procedural safeguards." Procunier v. Martinez, 416 U.S. 396, 417 (1974), overruled on other grounds by Thornburgh v. Abbott, 490 U.S. 401 (1989). These minimum procedural safeguards include "notice to the inmate, the opportunity for the letter's author (inmate or otherwise) to protest, and review by someone other than the initial decision-maker." Montcalm Pub. Corp. v. Beck, 80 F.3d 105, 108 (4th Cir. 1996).

23

The Second Amended Complaint does not allege that Rowe was denied these minimum procedural safeguards. Indeed, the Second Amended Complaint never so much as even mentions the word "notice," let alone allege that Rowe was denied notice. (See generally ECF No. 27.) Moreover, Rowe clearly had the opportunity to protest the decision to withhold his correspondence, given that he both filed an Informal Complaint and a Regular Grievance and also appealed from Darden's decision rejecting Rowe's Regular Grievance. (Id. ¶¶ 29-32.) Lastly, Rowe's complaints were reviewed by, at least, Darden and Holloway, both of whom were not alleged to be the initial decisionmakers. The Second Amended Complaint thus not only fails to state a procedural due process claim against Carpenter, Darden, and Holloway, but also makes clear that Rowe was not denied the requisite minimum procedural safeguards to which he was entitled.

Furthermore, with respect to the allegations Rowe raised in his Opposition Memorandum concerning Carpenter, Darden, and Holloway's responses, these allegations are also not sufficient to state a claim. More specifically, Rowe alleges that Carpenter, Darden, and Holloway "deprived [Rowe] of his rights protected by the First and Fourteenth Amendments to know the reason for the rejection of his essays thereby depriving him of a reasonable opportunity to protest that decision . . . ." (ECF No. 31 at 8 (internal case formatting altered).) However, as explained above,

Rowe was not denied any of the requisite minimum procedural safeguards due to him. Moreover, "there is no liability under § 1983 for a prison administrator's response to a grievance or appeal." Cannon v. Armor Corr. Health Servs., No. 1:18-cv-202, 2019 WL 1646391, at *7 (E.D. Va. Apr. 15, 2019) (quoting Brown v. Va. Dep't of Corr., No. 6:07-cv-33, 2009 WL 87459, at *13 (W.D. Va. Jan. 9, 2009)). According to the Second Amended Complaint, all three defendants' responses to the Informal Complaint or Regular Grievance mentioned that there were concerns based on "legitimate facility interests of order and security," that there were no policy violations, or that the grievance was unfounded. (ECF No. 27 ¶¶ 31, 34, 36 (internal quotation marks omitted).) Although these responses do not explain how Rowe's essays implicated these concerns, Carpenter, Darden, and Holloway cannot be held liable for these responses, especially given that Rowe is not entitled to a detailed explanation under the minimum procedural safeguards. Therefore, the Second Amended Complaint fails to state a claim that Carpenter, Darden, and Holloway violated Rowe's due process or First Amendment rights.

> **4)** **The Second Amended Complaint Fails to State First Amendment Claims Against Birckhead, Carpenter, and Perkerson.**

A "prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections systems."

<u>Pell v. Procunier</u>, 417 U.S. 817, 822 (1974). As the Supreme Court explained:

> [C]ensorship of prisoner mail is justified if the following criteria are met. First, the regulation or practice in question must further an important or substantial governmental interest unrelated to the suppression of expression. Prison officials may not censor inmate correspondence simply to eliminate unflattering or unwelcome opinions or factually inaccurate statements. Rather, they must show that a regulation authorizing mail censorship furthers one or more of the substantial governmental interests of security, order, and rehabilitation. Second, the limitation of First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved.

<u>Procunier v. Martinez</u>, 416 U.S. 396, 413-14 (1974), <u>overruled on other grounds by</u> <u>Thornburgh v. Abbott</u>, 490 U.S. 401 (1989).

## A.    Defendant Birckhead

The Second Amended Complaint alleges that Birckhead "directed that [Rowe's essay, 'Life at Sussex 2 State Prison is a Potemkin Prison,'] be censored." (ECF No. 27 ¶ 26.) As the Court explained in its previous MEMORANDUM OPINION, Rowe's "use of [the] term ['censor' or 'censorship'] is a legal conclusion, which the Court need not take as true under Rule 12(b)(6)." (ECF No. 20 at 8 n.7.) Yet, the Second Amended Complaint only claims that Birckhead "directed that [Rowe's essay] be censored." (ECF No. 27 ¶ 26.) Because this allegation is merely a legal conclusion, the Second Amended Complaint fails the requirements of <u>Ashcroft v. Iqbal</u>, 556

U.S. 662 (2009), and <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007), and it fails to state a claim against Birckhead.

## B.  Defendants Carpenter and Perkerson

Although the Second Amended Complaint contains several references to Carpenter and Perkerson, these references are not sufficient to state a claim.  It is settled that "[p]rison officials may not censor inmate correspondence simply to eliminate unflattering or unwelcome opinions or factually inaccurate statements." <u>Martinez</u>, 416 U.S. at 413.  However, the Second Amended Complaint's allegation that Carpenter "acknowledged that the criticism of the institution in [Rowe's first] essay was also of concern to her," (ECF No. 27 ¶ 27), is not sufficient to state a claim for relief because the Second Amended Complaint alleges that Birckhead, not Carpenter, was responsible for the alleged censorship.  Indeed, the Second Amended Complaint only alleges that Carpenter and Perkerson "believ[ed] [Rowe's first essay] should be censored" and "brought the essay to the attention of Defendant Birckhead," not that they themselves prevented the essay from being transmitted. (<u>Id.</u> ¶ 26.)  Furthermore, with respect to Rowe's second essay, the Second Amended Complaint alleges that, "[o]n information and belief, this censorship was accomplished by either Defendant Carpenter or Defendant Perkerson . . . ." (<u>Id.</u> ¶ 38.)  Similar to the allegation against Birckhead, this allegation is nothing more than a legal conclusion.  Consequently,

the Second Amended Complaint fails to state a claim against both Carpenter and Perkerson.[8]

## CONCLUSION

For the reasons set forth above, the Defendants' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT (ECF No. 29) will be granted.

It is so ORDERED.

/s/  *REP*
_____
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: January 22, 2020

---

[8]    Rowe's arguments concerning whether Carpenter, Darden, and Holloway violated his due process and First Amendment rights by inadequately responding to his Informal Complaint and Regular Grievance are addressed *supra* in Section (b)(3): The Second Amended Complaint Fails to State a Procedural Due Process Claim and First Amendment Claim Against Carpenter, Darden, and Holloway.